UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOLLY MALONE'S LLC, *et al.*, <br><br> Defendants. | Civil Action No. 19-3479 (JEB) |

### MEMORANDUM OPINION

In this Federal Communications Act case, Plaintiff Joe Hand Promotions, Inc., a commercial distributor of sports and entertainment programming, accuses a slew of Defendants of illegally intercepting and broadcasting an Ultimate Fighting Championship bout at a D.C. bar named Finn McCool's on December 30, 2016. As this litigation has progressed, however, Plaintiff has had difficulty proving who exactly owned the bar on that date. In its most recent Complaint, Joe Hand listed no fewer than eleven Defendants. The Clerk of Court has since entered default against two of those, and four others have been granted summary judgment. Three of the remaining Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. They assert that they had neither ownership nor control of the bar on the date of the broadcast. As Plaintiff has not sufficiently controverted the evidence that demonstrates these Defendants' lack of involvement, the Court will grant their Motion.

**I.   Background**

It is undisputed that Plaintiff held the exclusive right to license and distribute the Ultimate Fighting Championship 207: Nunes v. Rousey broadcast, which aired on December 30,

1

2016.  See ECF No. 31 (Sec. Am. Compl.), ¶¶ 1, 17.  Without obtaining the proper authorization, Defendants allegedly intercepted and exhibited the program to patrons at the bar Finn McCool's, located at 713 8th Street, S.E., in Washington, in violation of the Federal Communications Act.  Id., ¶¶ 2, 20–22.

While Plaintiff's allegations are relatively straightforward, identifying the proper Defendants has proven a winding path.  Joe Hand's First Amended Complaint named six Defendants: Molly Malone's LLC dba Finn McCool's, 713 Partners LLC dba Finn McCool's, Xavier Cervera, Andrea Gentile, William A. Sport, and Barrack's Row Ent Group, LLC.  See ECF No. 5.  When Molly Malone's and Barrack's Row failed to respond, the Clerk of Court entered default against them on March 23, 2020.  See ECF Nos. 16, 17.  On July 8, 2020, Plaintiff filed a Second Amended Complaint, which included allegations of wrongdoing identical to those in its prior Complaint, but added five additional Defendants: William J. Nimmo, Greg Cotter, Michael Cheung, Edward Cheung, and Ricardo Cervera.  See SAC, ¶¶ 8–12.

Nimmo, Cotter, Michael Cheung, and Edward Cheung then moved for summary judgment, arguing that they did not have a financial interest in Finn McCool's or operational or managerial control over the bar when the broadcast allegedly took place.  See ECF No. 45.  Joe Hand opposed these Defendants' motion but failed to file a statement of disputed material facts as required by Local Civil Rule 7(h).  See ECF No. 46.  The Court accordingly considered the facts they set forth as undisputed.  Joe Hand Promotions, Inc. v. Molly Malone's LLC, No. 19-3479, 2020 WL 5816219, at *1–2 (D.D.C. Sept. 30, 2020) (citing LCvR 7(h)(1)).  It thus granted summary judgment to these Defendants on September 30, 2020.  Id. at *4.

This time around, three other Defendants — 713 Partners, Andrea Gentile, and William A. Sport — collectively move for summary judgment.  See ECF No. 67 (Def. MSJ).  Plaintiff

2

opposes their Motion, see ECF No. 72 (Pl. Opp.), and this time submits a Rule 7(h) statement disputing some of these Defendants' facts. See ECF No. 72-1 (Pl. SMF). The Court considers other unchallenged facts asserted by the moving Defendants in their affidavits and declarations as true. See Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)) ("Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits[,] . . . declarations[,] or documentary evidence to the contrary.").

The procedural background now complete, the Court will set out the facts relevant to the instant Motion in its analysis below.

**II.     Legal Standard**

Federal Rule of Civil Procedure 56(a) requires the Court "to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it would change the outcome of the litigation, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007). When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion" by "citing to particular parts of materials in the record," such as affidavits, declarations, or other evidence. See Fed. R. Civ. P. 56(c)(1)(A).

**III.    Analysis**

Joe Hand's Second Amended Complaint alleges that eleven Defendants violated the FCA by illegally intercepting and exhibiting the program without authorization. See 47 U.S.C. § 553 (prohibiting theft of communications distributed over cable-television systems). As mentioned previously, the question raised in this Motion is whether three of those Defendants are liable. The pertinent facts, viewed in the light most favorable to Plaintiff, are as follows. Sport and Gentile once held interests in Molly Malone's LLC, which owned and operated Finn McCool's. See ECF No. 67-1 (Def. SMF), Exh. A (Affidavit of Andrea Gentile), ¶ 3; Exh. C (Affidavit of William A. Sport), ¶ 3; cf. Pl. SMF, ¶ 13. They both sold the entirety of their interests in the company to Barrack's Row Ent Group LLC on December 31, 2012. See Gentile Aff., ¶ 3; Sport Aff., ¶ 3; cf. Pl. SMF, ¶ 13. Sport was compensated for his stake with a promissory note secured by the assets of Molly Malone's and Barrack's Row. See Def. SMF, Exh. D (Supplemental Declaration of William A. Sport), ¶ 6; cf. id., Exh. A (UCC Financing Statement). Gentile, who owned a relatively small share of Molly Malone's to begin with, see Gentile Aff., Exh. A, averred that the sale marked the end of her connection to the company. See Def. SMF, Exh. B (Response of Andrea Gentile to Pl.'s Request for Admission), ¶¶ 1–3.

Barrack's Row defaulted on the promissory note to Sport sometime in late 2016. See Sport Suppl. Decl., ¶ 7. As the secured creditor, Sport was entitled to seize the assets of the company to make good on the debt. Id., Exh. A. Barrack's Row accordingly entered a tender-of-collateral agreement with Sport on November 15, 2016. See Def. SMF, ¶ 6; Sport Suppl. Decl., Exh. D-2 (Tender-of-Collateral Agreement). In that agreement, Barrack's Row

represented that it still owned Molly Malone's, and it agreed to deliver the assets of that company in satisfaction of its obligation to Sport. See Tender-of-Collateral Agreement, ¶¶ 1–2. The agreement, however, was conditioned on Sport's final approval of the assets, and, "unless otherwise specified," those assets would not be conveyed until January 1, 2017. Id., ¶ 7(a)-(b). In the meantime, Barrack's Row was required to "own and operate" all the assets. Id. at ¶ 7(b); see also Sport Suppl. Decl., ¶ 7.

On December 31, 2016, Sport assigned his right to take possession of Molly Malone's assets to an LLC he formed for the purpose, 713 Partners. See Def. SMF, ¶ 7; see also Sport Suppl. Decl., Exh. D-3 (Assignment). That assignment specifically prohibited transfer of Finn McCool's from Barrack's Row until after January 1, 2017. See Def. SMF, ¶ 8. As mentioned above, Joe Hand alleges that Finn McCool's intercepted the broadcast on December 30, 2016. See SAC, ¶ 1. These facts, taken together, demonstrate that all three Defendants "had no role whatsoever in the control, ownership or operation of" Finn McCool's on the date of the alleged wrongdoing. See Sport Suppl. Decl., ¶ 5; see also Sport Aff., ¶¶ 4–5; Gentile Aff., ¶¶ 4–5.

Joe Hand does not dispute the terms of the tender-of-collateral agreement, see Pl. SMF, ¶ 6; cf. Def. SMF, ¶ 6, the assignment to 713 Partners on December 31, see Pl. SMF, ¶ 7; cf. Def. SMF, ¶ 7, or the conditions restricting transfer of Finn McCool's until after January 1. See Pl. SMF, ¶ 8; cf. Def. SMF, ¶ 8. It nevertheless contends that Barrack's Row returned ownership and control of Finn McCool's to Sport and Gentile on August 31, 2016. See Pl. SMF, ¶ 3. As evidence, it presents a letter dated August 30, 2016, from Barrack's Row's counsel, alleging that Sport and Gentile had breached the terms of a settlement agreement by refusing to take back ownership of Molly Malone's. Id., Exh. A (Breach-of-Settlement Letter) at 1–2. The letter declares that Barrack's Row was "turning over control" of assets to Sport, Gentile, and Xavier

5

Cervera effective the following day. Id. at 2. Additionally, Plaintiff points to a letter Sport's attorney sent to the Washington Tax Office that indicates Sport advanced money to Barrack's Row beginning in September 2016, so that the company could meet its "[i]mmediate liabilities for payroll, current taxes, and rent." Id., Exh. B at 3. According to Plaintiff, by advancing funds for the bar to meet those obligations, Sport "acted on behalf of" Finn McCool's. See Pl. Opp. at 4.

As for 713 Properties, Joe Hand asserts that the company "was operating" Finn McCool's on the date of the broadcast, citing a series of business registrations the company made in the name of Finn McCool's from October through December of 2016. Id. at 5–6. On October 11, for instance, 713 Properties received a certificate from the Washington Department of Consumer and Regulatory Affairs to operate under the trade name Finn McCool's. Id.; see also Pl. SMF, Exh. C. The operating agreement for 713 Partners, executed by Sport on November 22, states that the company would do business "under the name 713 Partners" or "Finn McCool's." See Pl. Opp. at 5; see also Pl. SMF, Exh. E. Further, 713 Partners was registered with the District of Columbia Tax and Revenue Office at the bar's address as of December 8, 2016. See Pl. Opp. at 5; see also Pl. SMF, Exh. D.

While all of this is interesting, nothing here casts doubt on the dispositive nature of the November 15 tender-of-collateral agreement, which Plaintiff concedes is valid. In that agreement, Barrack's Row represented that it then owned Finn McCool's. That dictates the outcome here. Suppose that the Court inferred that Barrack's Row effectively returned Finn McCool's to Sport and Gentile by sending the breach-of-settlement letter on August 30. Even if that were true, the company must have resumed ownership of the bar by November 15, when it entered the tender-of-collateral agreement with Sport. Again, Joe Hand does not dispute that

Barrack's Row claimed ownership of Finn McCool's on that later date. See Tender-of-Collateral Agreement, ¶ 2; see also Def. SMF, ¶ 6; cf. Pl. SMF, ¶ 6. The breach-of-settlement letter, on which Plaintiff relies extensively for support, see, e.g., Pl. SMF, ¶¶ 3–5, 13–15, 17, 18, thus turns out to be a glass jaw.

Nor does Plaintiff's evidence indicating that Sport made loans to Barrack's Row and incorporated 713 Partners to do business as Finn McCool's before the date of the broadcast change the outcome. See Pl. SMF Exhs. B, C, D, E. Those facts merely align with the actions of someone preparing to take over the operations of an ongoing business. Indeed, according to the tender-of-collateral agreement, that is precisely what Sport was doing up until January 1, 2017, when 713 Partners could take over the bar. See Tender-of-Collateral Agreement, ¶ 7(b); see also Pl. SMF, ¶ 8; Sport Suppl. Decl., Exh. C. Plaintiff's evidence thus does not controvert Sport's sworn statement that he only assumed ownership and control of the bar through 713 Partners in 2017. His testimony is therefore accepted as true.

The Court acknowledges some factual discrepancies between this decision and its grant of summary judgment to the previous Defendants. See Molly Malone's LLC, 2020 WL 5816219, at *1–3. While many of the undisputed facts in the instant Motion overlap with the assertions of the previous Defendants, other aspects of the two accounts appear incompatible. Because Plaintiff has allowed some conflicting elements of the two accounts to go unchallenged, the Court has been required to accept both as true.

## IV.  Conclusion

Based on the undisputed evidence before the Court, Defendants had no interest or involvement, financial or otherwise, with the establishment when the broadcast took place. As a

result, they cannot have violated the FCA as a matter of law. The Court therefore will grant their

Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*<br>
JAMES E. BOASBERG<br>
United States District Judge

Date: October 1, 2021